## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DRAPER BEDFORD**                                    **CIVIL ACTION**

**VERSUS**                                            **NO.  05-2766**

**JAMES D. MILLER, WARDEN WCI**                       **SECTION "K"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C),** and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases.**  Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.  *See* 28 U.S.C. § 2254(e)(2).[1]

### I.    Factual Background

The petitioner, Draper Bedford ("Bedford"), is incarcerated in the Rayburn Correctional Center (f/k/a Washington Correctional Institute) in Angie, Louisiana.[2]  On February 16, 2000, Bedford and a co-defendant, Ronald Ceazar, were charged in a six count Bill of Information in St.

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 3.

Tammany Parish.[3]  In that Bill, Bedford alone was charged in Counts One, Two, Three, and Five with distribution of cocaine.  In addition, both Bedford and Ceazar were charged in Count Four with distribution of cocaine and in Count Six, as amended on February 23, 2000, with possession of 28 grams or more, but less than 200 grams, of cocaine.[4]

On May 29, 2001, Bedford entered pleas of guilty to each of the six counts in the Bill of Information.[5]  The State filed a multiple bill to which Bedford also entered a plea of guilty.[6]  Bedford waived legal delays and was sentenced as a multiple offender to serve 22 1/2 years on Count One, without benefit of probation, suspension of sentence or good time.[7]  The Court also sentenced him to serve concurrent 20 year sentences on each of the five remaining counts.

Bedford's conviction became final five days later on Sunday, June 3, 2001, or the following business day, June 4, 2001, when he did not timely move to appeal or file for reconsideration of his sentence.  *See Cousin v. Lensing*, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the five day deadline for filing a notice of appeal under La. Code Crim. P. art. 914[8]), *cert. denied*, 539 U.S. 918 (2003); *McGee v. Cain*, 104 Fed. Appx. 989, 991-992 (5th Cir. July 28, 2004) (applying *Salinas v. Dretke*, 354 F.3d 425 (5th Cir.), *cert. denied*, 541 U.S. 1032 (2004))

---

[3]St. Rec. Vol. 1 of 3, Bill of Information, 2/16/00.

[4]*Id.*, handwritten amendment dated 2/23/00.

[5]St. Rec. Vol. 1 of 3, Minute Entry (3 Pages), 5/29/01; Transcript of Guilty Plea, dated 5/23/01.

[6]*Id.*; Multiple Bill, 5/29/01.

[7]*Id.*

[8]At the time of petitioner's conviction, La. Code Crim. P. art. 914 required a criminal defendant  to move for leave to appeal within five days of the order or judgment being appealed or of a ruling on a timely motion to reconsider sentence.  Failure to move timely for appeal renders the conviction and sentence final at the expiration of the period for filing the motion for appeal. *State v. Counterman*, 475 So.2d 336, 338 (La. 1985).  Article 914 was amended by Acts 2003, No. 949, § 1 to provide 30 days for filing of the notice of appeal.

2

(a state conviction is final for AEDPA limitations purposes at the conclusion of the original period for seeking direct review and not at conclusion of an out-of-time appeal granted on application for post conviction relief).

## II.    Procedural Background

Eight months later, on February 5, 2002, Bedford signed a Uniform Application for Post Conviction Relief which was filed in the Trial Court on February 8, 2002.[9]  Bedford raised five claims: (1) the plea was not knowing, voluntarily or intelligently made; (2) he was not told the sentencing range before pleading to the multiple bill; (3) he was not read his *Boykin* rights at the multiple bill proceeding; (4) he was denied parole eligibility which was not prohibited under the statute; and (5) the Trial Court violated his Fifth, Sixth and Fourteenth Amendment rights by failing to read his *Boykin* rights and inform him of the consequences of his plea.

The Trial Court dismissed the Application as meritless on March 13, 2002.[10]  The Louisiana First Circuit Court of Appeal denied Bedford's subsequent Writ Application on August 9, 2002, pursuant to La. Code Crim. P. art. 930.3 and *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996).[11]

---

[9]St. Rec. Vol. 1 of 3, Uniform Application for Post Conviction Relief, 2/8/02 (signed 2/5/02).

[10]St. Rec. Vol. 1 of 3, Order Dismissing Application for Post-Conviction Relief, 3/13/02.

[11]St. Rec Vol. 3 of 3, 1st Cir. Order, 2002-KW-0794, 8/9/02.  Under La. Code Crim. P. art. 930.3, post-conviction relief will not be granted unless the petitioner establishes that: (1) the conviction was obtained in violation of the state or federal constitution; (2) the court exceeded its jurisdiction; (3) the conviction or sentence subjected him to double jeopardy; (4) the limitations on the institution of the prosecution had expired; (5) the statute creating the offense for which he was convicted and sentenced is unconstitutional; (6) the conviction or sentence constitute the ex post facto application of law in violation of the federal or state constitution; (7) the results of DNA testing performed proves by clear and convincing evidence that the petitioner is factually innocent of the crime for which he was convicted. In *State ex rel. Melinie*, the Louisiana Supreme Court, relying on La. Code Crim. P. art. 930.3, ruled that claims of excessive sentence or errors in sentencing which should be raised on direct appeal were not proper grounds for post-conviction relief.

Bedford later filed an untimely[12] writ application in the Louisiana Supreme Court on October 16, 2002.[13] Bedford raised only the first, second, third and fifth claims previously presented to the Trial Court in the Application for Post Conviction Relief. On October 10, 2003, the Louisiana Supreme Court denied the Application also citing La. Code Crim. P. art. 930.3 and *State ex rel. Melinie*.[14]

Four months later, on February 8, 2004, Bedford signed a Motion to Correct and Vacate and Illegal Multiple Offender Adjudication which was filed by the Trial Court on February 12, 2004.[15] In the Motion, Bedford raised four claims: (1) he was not informed of his rights at the multiple offender proceeding; (2) he was improperly denied good time credits; (3) he was improperly denied parole eligibility; and (4) he was not advised of his rights before entering a plea of guilty in the 1995 predicate offense. The Trial Court denied the Motion without reasons on March 25, 2004.[16]

On April 21, 2004, Bedford file a Writ Application with the Louisiana First Circuit seeking review of that order.[17] The Court granted the Application in part finding that it was not appropriate

---

[12]La. S.Ct. R. X§5provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment. See *Marshall v. Cain*, 155 Fed. Appx. 769, 2005 WL 3115095 (5th Cir. Nov. 22, 2005) (mailbox rule controls under La. S. Ct. Rule X§5); *see also* La. Code Crim. Proc. art. 922(A). The Writ Application was filed in the Louisiana Supreme Court on October 16, 2002. St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 02-KH-2551, 10/16/02. Bedford dated his signature on the pleading on September 16, 2002. The Writ also had a postal date of September 17, 2002. Both dates are outside of the time period allowed under La. S. Ct. Rule X§5.

[13]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 02-KH-2551, 10/16/02.

[14]*State ex rel. Bedford v. State*, 855 So.2d 335 (La. 2003); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2002-KH-2551, 10/10/03.

[15]St. Rec. Vol. 1 of 3, Motion to Correct and Vacate and Illegal Multiple Offender Adjudication, 2/12/04.

[16]St. Rec. Vol. 1 of 3, Trial Court Order, 3/25/04.

[17]The record does not contain a copy of this Writ Application. The filing date was obtained from the office of the Clerk of the Louisiana First Circuit.

for the Trial Court to prohibit good-time as part of Bedford's sentence.[18]  The Court remanded the matter with instructions for the Trial Court to amend the minutes and commitment to remove the good-time restriction.  The Court denied all other aspects of the Application.

On July 27, 2004, Bedford presented for mailing a Writ Application to the Louisiana Supreme Court, which was filed August 11, 2004, seeking review of the four claims raised in the Motion to Correct.[19]  On August 1, 2004, he also mailed to the Trial Court a Motion to Set Aside an Illegal Multiple Offender Adjudication, which was filed August 3, 2004.  In this Motion, Bedford argued that the Trial Court failed to advise him of the sentencing range at the multiple bill hearing and, as a result, his guilty plea was not knowing and voluntary.[20]

On August 13, 2004, the Trial Court held a hearing to correct the minutes to remove the good-time restriction as ordered by the Louisiana First Circuit.[21]  Thereafter, on September 9, 2004, the Trial Court construed Bedford's pending Motion to Set Aside to be a repetitive Application for Post Conviction Relief and denied it as such pursuant to La. Code Crim. P. art. 930.4.[22]  The record reflects that a copy of this Order was mailed to Bedford by the clerk of the Trial Court on September 21, 2004.[23]

---

[18]St. Rec. Vol. 3 of 3, 1st Cir. Order, 2004-KW-0925, 6/28/04.

[19]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 04-KH-2073, 8/11/04; St. Rec. Vol. 1 of 3, La. S. Ct. Letter, 2004-KH-2073, 8/11/04 (showing postal meter date 7/28/04); *see also*, Rec. Doc. No. 3, Exh. H, Inmate Funds Withdrawal Request, 7/27/04.

[20]St. Rec. Vol. 1 of 3, Motion to Set Aside an Illegal Multiple Offender Adjudication, 8/3/04; *see also*, Rec. Doc. No. 3, Exh. J., Inmate Funds Withdrawal Request, 8/1/04.

[21]St. Rec. Vol. 1 of 3, Minute Entry, 8/13/04; St. Rec. Vol. 2 of 3, Hearing Transcript, 8/13/04.

[22]St. Rec. Vol. 1 of 3, Order Dismissing Application for Post Conviction Relief, 9/9/04.

[23]St. Rec. Vol. 1 of 3, Letter from Clerk of Court, 9/21/04.

The record contains another Motion to Correct Illegal Sentence filed October 6, 2004, in which Bedford urged the Trial Court not to construe his motion as an Application for Post Conviction Relief.[24]  A notation appears on the face of the pleading "already ruled on."[25]  Bedford was notified by letter dated October 20, 2004, from the clerk of the Trial Court that "your Motion to Correct Illegal Sentence was previously denied by this Court."[26]

Thereafter, on October 27, 2004, Bedford signed a Notice of Intent to Seek Relief in the Louisiana First Circuit from the Trial Court's denial of his Motion to Correct Illegal Sentence "on/or about October 20, 2004."  Bedford mailed a Writ Application to the Louisiana First Circuit on October 31, 2004 and it was filed in that court on November 4, 2004.[27]  The Court denied the Application on January 24, 2005, as procedurally improper under *State v. Gedric*, 741 So.2d 849 (La. App. 1st Cir. 1999).[28]

On February 10, 2005, Bedford mailed a timely Writ Application, filed March 15, 2005, to the Louisiana Supreme Court  in which he raised three claims:[29] (1) he was denied the right of review of his Motion to Correct Illegal Sentence; (2) the Trial and Appellate Courts erred in treating his

---

[24]St. Rec. Vol. 1 of 3, Motion to Correct Illegal Sentence, 10/6/04.

[25]*Id.*

[26]St. Rec. Vol. 3 of 3, Letter from Clerk of Court, 10/20/04.

[27]Rec. Doc. No. 3, Exh. M, Inmate Withdrawal Request; Exh. (foll. Exh. M), Letter from Louisiana First Circuit Court of Appeal (showing filing date of 11/4/04).  The record does not contain a copy of this Writ Application.

[28]St. Rec. Vol. 3 of 3, 1st Cir. Order, 2004-KW-2411, 1/24/05.  In *Gedric*, the appellate court held that, under La. Code Crim. P. art. 916(3), the trial court retains jurisdiction only to correct an illegal sentence pursuant to a properly and timely filed motion to reconsider sentence.

[29]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 05-KH-680, 3/15/05; St. Rec. Vol. 1 of 3, La. S. Ct. Letter, 2005-KH-680, 3/15/05 (postal meter date 2/11/05);

Motion to Correct Illegal Sentence as an Application for Post Conviction Relief; and (3) his Motion to Correct Illegal Sentence has merit and he is entitled to relief.

On May 20, 2005, the Louisiana Supreme Court entered separate orders denying Bedford's two pending Writ Applications, the one filed August 11, 2004, and the one filed March 15, 2005.[30] Both Applications were denied pursuant to La. Code Crim. P. art. 930.8,[31] *State ex rel. Glover v. State*, 660 So.2d 1189 (La. 1995),[32] *State v. Parker*, 711 So.2d 694 (La. 1998),[33] La. Code Crim. P. art. 930.3, *State ex rel. Melinie*, and La. Code Crim. P. art. 930.4(D).[34]

## III.   Federal Petition

On July 28, 2005, Bedford filed a Petition for Federal Habeas Corpus Relief in which he alleged the following grounds for relief:[35] (1) petitioner entered a guilty plea at the multiple offender hearing without a valid waiver of his right to remain silent; and (2) the Trial Court failed to advise petitioner of the statutory minimum and maximum penalties during the multiple offender hearing.

---

[30]*State ex rel. Bedford v. State*, 902 So.2d 1037 (La. 2005); *State ex rel. Bedford v. State*, 902 So.2d 1051 (La. 2005); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2004-KH-2073, 5/20/05; La. S. Ct. Order, 2005-KH-0680, 5/20/05.

[31]La. Code Crim. P. art. 930.8 provides the limitations period for a defendant to seek post-conviction relief in Louisiana.

[32]In *Glover*, the Louisiana Supreme Court held that an appellate court can deny post-conviction relief as untimely under Article 930.8, even if the lower court addressed the merits or did not consider timeliness.

[33]In *Parker*, the Louisiana Supreme Court held that the limitation period under Article 930.8, preempts the language in La. Code Crim. P. art. 882 dealing with the timing of a motion to correct illegal sentence.

[34]La. Code Crim. P. Art. 930.4(D) provides for the dismissal of a post conviction application where the application is a successive application which raises claims that are not new or different.

[35]Rec. Doc. No. 3.

The State filed a response to Bedford's federal petition alleging that Bedford failed to exhaust state court remedies and the petition is not timely filed.[36]

## IV.    Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[37] applies to Bedford's petition, which is deemed filed in this court under the federal mailbox rule on June 30, 2005.[38]   The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).  In this case, the State has raised the failure to exhaust and the untimeliness of the petition as its defense.

## V.    Exhaustion Requirement

The State, without any discussion, argues that Bedford has not exhausted state court remedies.

---

[36]Rec. Doc. No. 9.

[37]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[38]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Bedford's federal habeas petition on July 28, 2005, when he paid the filing fee.  Bedford dated his signature on the petition on June 30, 2005.  This is the earliest date on which he could have been submitted the pleadings to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court. *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420). For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). A prisoner does not fairly present a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id*.

As outlined above, Bedford filed three Writ Applications in the Louisiana Supreme Court related to this conviction.  A review of the claims raised in each Application reflects that Bedford has fairly presented each of claims raised in this federal petition to the Louisiana Supreme Court.

In his 2002 Writ Application, Bedford challenged the Trial Court's failure to advise him at the multiple offender hearing of his right to remain silent and failed to advise him of the minimum and maximum of the sentencing range.[39]  He also challenged the failure to advise him of the right to remain silent in his 2004 Writ Application.[40]  Bedford again raised the issue of the Trial Court's failure to advise him of the proper sentencing range in his 2005 Writ Application.[41]

These Louisiana Supreme Court filings clearly establish that Bedford in fact fairly presented both of his federal claims to the Louisiana Supreme Court.  The State's conclusory exhaustion defense must be rejected.

The Court further notes that, on the three occasions Bedford proceeded to the Louisiana Supreme Court, his Applications were denied on procedural grounds.  In other words, both of the claims presented to this Court are in procedural default.  The United States Supreme Court has recently explained the exhaustion of procedurally defaulted claims:

> In habeas, state-court remedies are described as having been "exhausted" when they are no longer available, regardless of the reason for their unavailability.  *See Gray v. Netherland*, 518 U.S. 152, 161, 116 S.Ct. 2074, 135 L. Ed.2d 457 (1996) .  Thus, if state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal, those remedies are technically exhausted, *ibid.*, but exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally

---

[39]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 2002-KH-2551, p. 3, 10/16/02.

[40]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 2004-KH-2073, p. v-vi, 8/11/04.

[41]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 2005-KH-680, p.4-8, 3/15/05.

is barred from asserting those claims in a federal habeas proceeding. *Id*., at 162, 116
S.Ct. 2074; *Coleman* [*v. Thompson*, 501 U.S. 722, 744-751 (1991)], 111 S.Ct. 2546.
*Woodford v. Ngo*, 126 S.Ct. 2378, 2387 (2006).

In the instant case, Bedford's claims have been exhausted but both relief on both claims was

denied by the Louisiana Supreme Court on state procedural grounds.  Thus, the claims, though

exhausted, may be considered barred from federal review as procedurally defaulted.

However, the State has not raised, nor waived, procedural default in this case.  Instead, the

State offers as a second defense that Bedford's petition is untimely filed under the AEDPA and

therefore barred from review.  It is not necessary for the Court to *sua sponte* address the issue of

procedural default because the Court finds that the limitations defense has merit for the reasons to

follow.

## VI.   Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his

conviction became final.[42]  *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001).  As set forth above,

Bedford's conviction became final on June 4, 2001, the first business day following his plea of guilty

---

[42]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person
in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest
of--

    A.    the date on which the judgment became final by the conclusion of direct
review or the expiration of the time for seeking such review;

    B.    the date on which the impediment to filing an application created by State
action in violation of the Constitution or laws of the United States is
removed, if the applicant was prevented from filing by such State actions;

    C.    the date on which the constitutional right asserted was initially recognized
by the Supreme Court, if the right has been newly recognized by the
Supreme Court and made retroactively applicable to cases on collateral
review;  or

    D.    the date on which the factual predicate of the claim or claims presented
could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral
review with respect to the pertinent judgment or claim is pending shall not be counted toward any
period of limitation under this subsection.  28 U.S.C. § 2244(d).

when he did not timely move to appeal or file for reconsideration of his sentence. *See Cousin*, 310 F.3d at 845. Under the plain language of § 2244, he had until June 4, 2002, to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Bedford's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a State post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir.), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). The United States Fifth Circuit has clarified its prior opinions to the contrary and resolved that timeliness in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams v. Cain*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2nd Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 2001 WL 995164, slip op. at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

The federal courts have also determined that requests for transcripts and copies of documents from the record, like those occasionally filed by petitioner, are not "applications for post-conviction or other collateral review" and therefore do not affect the timeliness calculations. *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcripts is not "other collateral review" for tolling purposes); *see also Brown v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, 2002 WL 63541 (E.D. La. Jan. 16, 2002); *Jones v. Johnson*, 2001 WL 1006062 at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. 2002) (delay in receipt of transcript, not required to file an application, does not warrant equitable tolling).

In this case, Bedford's AEDPA filing period began to run on June 5, 2001, the day after his conviction is deemed final. The filing period ran uninterrupted for 245 days, until February 5, 2002, when Bedford signed his Application for Post Conviction Relief which was filed in the Trial Court

13

on February 8, 2002.[43]  The Application remained pending, and the federal filing period was tolled, until September 8, 2002, which was 30 days (the period he had to seek further review) after the Louisiana First Circuit denied the related Writ Application.

The AEDPA filing period began to run again on September 9, 2002, and did so without interruption for the remaining 90 days, until Saturday, December 7, 2002, or the next business day, Monday, December 9, 2002, when it expired.  Bedford had no properly filed state application for post conviction relief or other collateral review pending during that time period.  His next such filing was 517 days later, on February 8, 2004,  when he signed the Motion to Correct which was filed in the Trial Court on February 12, 2004 and does not affect this calculation.  *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).  Bedford's federal petition is deemed filed on June 30, 2005, which was over two and one-half years after the AEDPA filing period expired on December 9, 2002.

The Court is aware that Bedford filed a Writ Application to the Louisiana Supreme Court during the period calculated above.  The Application was signed by Bedford on September 16, 2002, postmarked September 17, 2002, and filed by the court on October 16, 2002.  However, the Application was not timely under La. S. Ct. Rule X§5, and therefore was not properly filed for tolling purposes.

La. S.Ct. R. X§5 provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment.  See *Marshall v. Cain*, 155 Fed. Appx. 769, 2005 WL 3115095 (5th Cir. Nov. 22, 2005) (postmark date controls under La. S. Ct. Rule X§5); *see also* La. Code Crim. Proc. art. 922(A).  The Louisiana First Circuit issued its ruling on August 9, 2002.  Bedford's Application to the Louisiana Supreme Court was

---

[43]Bedford's signature date is presumed to be the earliest date on which he could have presented the pleading to prison officials for mailing under a prisoner mailbox rule.

postmarked on September 17, 2002 and filed on October 16, 2002.  For purposes of the mailbox rule, September 16, 2001, the date Bedford signed the pleading, is considered the earliest date on which he could have presented it to prison officials for mailing.  *See Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006) (the prisoner mailbox rule applies to filings in Louisiana state courts).  All of these dates are outside of the 30-day time limit set forth in La. S. Ct. Rule X§5.  The Application was not properly filed and can not be considered in the statutory tolling calculation.

Even if a reviewing Court were to afford Bedford tolling for the pendency of the 2002 Louisiana Supreme Court Writ Application, his federal petition is still untimely.  Under this alternative calculation, Bedford's AEDPA filing period would begin to run on June 5, 2001, the day after his conviction is deemed final.  The filing period would run uninterrupted for 245 days, until February 5, 2002, when Bedford signed his Application for Post Conviction Relief which was filed in the Trial Court on February 8, 2002.  The Application would remain pending, and the federal filing period would have been tolled, until September 8, 2002.  This date was 30 days (the period he had to seek further review) after the Louisiana First Circuit denied the related Writ Application.  The AEDPA filing period would begin to run again on September 9, 2002, and would have done so for seven days, until September 16, 2002, when Bedford signed the untimely Louisiana Supreme Court Writ Application and presumably presented it for mailing.

The Writ Application would have remained pending until October 10, 2003, when it was denied by the Louisiana Supreme Court.  The AEDPA filing period would begin to run again on October 11, 2003, and would do so for the remaining 113 days, until Saturday, January 31, 2004, or the next business day, February 2, 2004, when it expired.  Once again, this date falls before the February 8, 2004, signing of his Application for Post Conviction Relief filed in the Trial Court.

Thus, under this alternative calculation, Bedford's federal filing period would have expired on February 2, 2004, which was 16 months before he is deemed to have filed this federal petition. Even affording Bedford this generous calculation, his petition is still untimely filed under the AEDPA. Therefore, under either calculation, Bedford's federal petition is deemed filed on June 30, 2005, well after the expiration of the AEDPA filing period, and must be dismissed as untimely.[44]

## VII.   Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Draper Bedford's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this _____22nd_____ day of _____January_____, 2007.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[44]Bedford has not alleged and the record does not reflect any basis for equitable tolling in this case.  The record does not show the type of extraordinary circumstances which would warrant equitable tolling.  His petition should therefore be dismissed as time barred under the AEDPA.